## 24675. BROWN SHOE COMPANY *v.* MOORE.

DECIDED MARCH 17, 1936.   ADHERED TO ON REHEARING, MARCH 31, 1936.

*John C. Parker,* for plaintiff.

*John T. Coyle, Hoyt H. Whelchel,* for defendant.

STEPHENS, J. Brown Shoe Company sued L. L. Moore as guarantor of an account for shoes sold to Wilson Shoe Company. The contract sued on was in the form of a letter addressed to Brown Shoe Company and signed by the defendant saying: "In compliance with your request for a guarantee to establish with you credit for the Wilson Shoe Company, Moultrie, Georgia, and in consideration of one dollar to us in hand paid by you, the receipt and sufficiency of which is hereby acknowledged, (I we) hereby unconditionally jointly and severally guarantee payment, in accordance with the terms of the sale of whatever the said Wilson Shoe Company shall at any time be owing you, at the above or any other location or locations whether heretofore or hereafter contracted; the guarantee is to take effect without notice of its acceptance (which is hereby waived) and it is to be an open guarantee and to

continue in full force notwithstanding any renewals or extensions granted by you without obtaining any previous consent hereto and until expressly revoked by notice to that effect by registered mail (return receipt requested) from each of us to you, and until receipt of such notice is acknowledged by you. Notification of said party's defaults is hereby waived and it is agreed that this guarantee does not limit the amount of credit extended the said party, but (my our) liability hereunder is not to exceed the sum of Two Thousand and No/100 Dollars ($2000) at any one time. It is mutually understood that this guarantee is to bind the party who signs it, whether the same be signed by any other party (or parties) or not. No shipments are to be made except on orders confirmed by the undersigned. Dated this 5th day of April, 1932." It was alleged in the petition that the contract was modified by a later letter from defendant to plaintiff, dated May 5, 1932, as follows: "I have copy of your letter of May 2, 1932, to Wilson Shoe Co., advising that you do not have my approval on the special orders of April 29th, for two pairs of D-57, two pairs of D-74 and one pair of G-221. Mr. Wilson and I did not understand that these small special orders were to have my approval. In order that his trade can be satisfactorily served, and in order that the detail of getting off these special orders it seems that it will be necessary for you to ship such orders as stated above without my approval. We find that there are several days at a time when there are no special orders, and then some times there are two or three in the same day. We have agreed here that you ship these special orders about as indicated above without my special approval on each order, but I wish to advise you that in those cases, the special guarantee holds good for these special orders, without my writing an approval on the special orders or without a special letter from me. This letter is to modify our previous understanding so that special orders can be shipped by you as indicated above without my special guarantee in each case and yet they will be protected by my guarantee to you. Now as to the special orders made in letter of April 29th, by the Shoe Co. please wish to say that the Wilson Shoe Co. still wants them for these customers and I will thank you to ship them by parcel post, by air mail if possible, as these customers are in a hurry. My guarantee is extended to cover this special order." Attached to the petition was a long account beginning in Decem-

ber, 1932, ending in July, 1933, and totaling $1303.70. It was also alleged that Wilson Shoe Company was insolvent and that. Moore was a stockholder of this corporation. The defendant in the plea admitted the two latter allegations, and that the defendant had signed the guaranty and the letter of modification, but denied that he was indebted to the plaintiff as alleged.

On the trial the defendant's counsel moved to dismiss the suit on the ground that no cause of action was set out. Whereupon the plaintiff amended the petition by alleging in substance that certain of the sales orders which had been introduced in evidence had the personal approval of the defendant and that all those which did not have such approval were "special orders." The plaintiff introduced in evidence a large number of sales orders, a number of which bore the defendant's "O. K.," and also introduced a letter dated February 22, 1933, from the defendant to H. L. Miller, who was shown to be the credit man of Brown Shoe Company in which the defendant outlined plans for reorganizing the business of Wilson Shoe Company in which he made these statements: "There is due your company around $1600 or $1700 I understand. . . I am personally responsible for the amount due the bank and due Brown Shoe Company, and therefore, up to now, so far as the Brown Shoe Company account is concerned, the mortgage has made little or no difference. . . . We are giving Mr. Baxter a check for $500 on your account and he and Mr. Sanders, the new manager, are to send you an order for fill-in on shoes required for the sales in the immediate future and especially the Buster Brown sale to be advertised at the Moultrie Theatre on March 9th. Our plan is that Mr. Sanders, the new manager, will make the Brown plan reports each week and send a check each week for as much or more than he buys each week and that the business will be put on its own footing, nothing to be taken from it to pay on the bank debt or other accounts except from profits after the Brown Shoe Company account is in satisfactory condition. I think the effect of what we are doing is to put the store strictly on the Brown plan now full fledged." The plaintiff also introduced evidence in proof of the entire account against Wilson Shoe Company. A witness who had had a long experience in the shoe trade testified that "'special orders' are termed an order that was a rush order, calling for special pairs and some special styles for quick shipment. Special

sizes or styles. There might be two pairs or maybe more pairs. . . . They might have a special order for two or three pairs or there might be several dozen that would be a rush order, calling for special sizes and styles and we would term it 'special order.'" At the conclusion of the evidence for the plaintiff the defendant moved for a nonsuit which was granted.

Counsel for the defendant in error contend that the nonsuit was properly granted because the plaintiff failed to prove the case as alleged and because the evidence showed that the Brown Shoe Company had broken the contract of guaranty by shipping goods to Wilson Shoe Company on orders not confirmed by the defendant. The construction of the original contract of guaranty is not free from difficulty. It provides "that this guarantee does not limit the amount of credit extended said party, but my liability hereunder is not to exceed the sum of $2000 at any one time." It further provides that "no shipments are to be made except on orders confirmed by the undersigned." If this last provision is to be applied to all transactions with Wilson Shoe Company it obviously limits the amount of credit extended to the company. If otherwise it would be construed to mean that no shipments are to be covered by the guarantee except those made on orders confirmed by the defendant. The defendant limits his liability at any one time to $2000, and further limits it to sales made on orders confirmed by him. Under this construction the provision allowing the extension of credit to the Wilson Shoe Company is not destroyed by the subsequent provision as to shipments being made only on orders confirmed by the defendant. In this way the contract provides for virtually two accounts between Brown Shoe Company and Wilson Shoe Company one of which is guaranteed by the defendant and the other not so guaranteed. As the defendant permitted Brown Shoe Company to sell to Wilson Shoe Company outside the limits of his guaranty, the contract would not be broken by such sales, and the only question as to any and all sales is whether they were inside or outside of the contract of guaranty. In determining this question two things are to be considered, first, the effect of the letter of the defendant extending his guaranty so as to cover special orders not confirmed by him, and second, whether there was such acquiescence or ratification by the defendant in the sales or orders which he had not confirmed as to bring them into the cate-

gory of special orders. In extending his guaranty to cover special orders the defendant put no numerical limit as to the number of shoes which might constitute a special order. It is not clear just what kind of orders he means to be considered as special orders. It is not clear whether he means that only an order for a single pair of shoes can be considered special. The order which was the occasion of his writing the letter included five pairs of shoes.

The plaintiff contended that "special orders" had a technical meaning in the shoe trade and introduced some evidence to sustain this contention. This testimony, however, was itself rather indefinite as the witness said a special order might mean a few pairs or even three dozen pairs. The nearest that he came to explaining what the term "special order" meant was that it meant a rush order or an order for special or immediate attention. Among the numerous orders which were introduced in evidence there were many for a single pair or a few pairs of shoes. There were also a number of large orders which had been approved by the defendant. Although the evidence as to which orders should be construed as special was rather vague, it would have been correct for the court to leave to the jury to find which were special. This was a question of fact, and not a question of law.

In determining the question as to what were special orders the jury would have the right to consider any evidence as to the conduct of the parties so far as this bore on the question. The plaintiff introduced in evidence a letter written by it to the defendant under date of September 14, 1932, which said "Dear Mr. Moore: We today O. K.'d without your personal approval an order of September 10th, for the Wilson Shoe Company at Moultrie, for 75 pairs of shoes, representing the following sample numbers—M-228, M-229 1/2, G-608, T-3, T-7, W-8, N-250, T-80. This order as we analyzed it was size-ups, although somewhat larger than the size orders we put through without your approval. This action was taken because we know that these shoes are needed for Saturday business, but we urge that you and Mr. Wilson have a definite understanding as to the size orders that are to be passed here without your approval. This order totals slightly over the amount that we have been approving for $100. Yours very truly, Brown Shoe Company." This letter conveyed the information to the defendant that the plaintiff had "O. K.'d" an order for 75 pairs of shoes

without his personal approval, that this was somewhat larger than the size orders which had been put through without his approval and that the plaintiff had been treating as special orders those which did not exceed $100. This letter was not answered by the defendant though it called for an answer. He did not protest against or disapprove the plaintiff's adopting an arbitrary figure of $100 as the limit for special orders. Furthermore, in February, 1933, the defendant wrote to the agent of the plaintiff stating that the amount due by Wilson Shoe Company to Brown Shoe Company was $1600 or $1700 and that he was personally responsible for the account. These facts should have been submitted to the jury to determine whether the defendant was liable on his guarantee for the entire account sued on or what part of the account he was liable for.

The only other error complained of is the refusal of the court to admit in evidence a paper called "a concentration agreement" which had been signed by Wilson Shoe Company and the defendant prior to the time the defendant executed the original guaranty contract. This concentration agreement does not refer to the guaranty contract nor does the guaranty contract refer to it. There is nothing in the concentration agreement which would throw light on the question of what was a special order, and there was not sufficient evidence as to the concentration plan to make this concentration agreement material to the issues in the case. This agreement was not pleaded by the plaintiff as a part of the defendant's contract. For these reasons it was not error to exclude it from evidence. The court erred in granting a nonsuit.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*

ON MOTION FOR REHEARING.

The motion for rehearing is made by the defendant in error on the ground that this court in its opinion reversing the grant of a nonsuit in this case treated the contract as it appeared in evidence rather than the contract as recited in the petition as being the contract sued on. It appears that the contract as introduced in evidence had a provision attached that "this guarantee does not limit the amount of credit extended the said party" whereas the contract as it appeared in the petition contained no such provision.

Rule 20 of this court provides that "wherever it is reasonably possible to do so, counsel will, on or before the call of the case for argument, supply a joint statement indicating whether the briefs

together contain such a statement of the facts as to justify a decision upon the briefs without a reading of the record by the Judges." Counsel for the plaintiff in error in "Part 1" of his original brief filed stated that the plaintiff in error filed suit against the defendant in error "on a contract of guaranty (page 1 of the brief of documentary evidence)." Counsel for the defendant in error in his original brief filed states that "Part one of the brief of the plaintiff in error sets out substantially a correct statement of facts" with the exception of certain statements in regard to the testimony of a named witness, which is not material here. It appears from the contract as copied on page 1 of the documentary evidence that it contains a provision as follows: "It is agreed that this guarantee does not limit the amount of credit extended the said party." Although this court was not bound to accept the statement of counsel as to matters appearing in the record but could if it saw fit, refer to the record, it was nevertheless justified under rule 20 in accepting as correct the agreed statement by the parties that the contract sued on was the contract as contained on page 1 of the documentary evidence as it appeared of record, and in predicating its judgment upon the assumption that this was a correct copy of the contract sued on.

Although it now appears from statement of counsel on motion for rehearing that the contract introduced should not be treated as the contract sued on, but that the contract attached to the plaintiff's petition should be so treated, still the evidence as to orders approved by the guarantor and as to the admission by the guarantor that he was liable for the Brown Shoe Company account required that the case be submitted to the jury. *Rehearing denied.*